![Davis Wright Tremaine LLP logo]

42nd Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Jeremy A. Chase**
(212) 603-6495 tel

jeremychase@dwt.com

April 14, 2026

**VIA ECF**

Hon. Richard K. Eaton
United States Court of International Trade
1 Federal Plaza
New York, NY 10278

      Re:    *Euro-Notions Florida, Inc. v. United States et al.*, Case No. 1:25-cv-00595-RKE

Dear Judge Eaton:

This firm represents a coalition of news organizations: Bloomberg L.P., Dow Jones & Company, Inc. (publisher of *The Wall Street Journal*), The New York Times Company, and Reuters News & Media Inc. (collectively, the "News Organizations"). We write now regarding the closure to the public of the April 14, 2026 conference in the above-captioned action and in anticipation of documents being filed under seal in this and related actions. As set forth below, we respectfully request that today's (April 14) conference be opened to the public and the press and that any filings by U.S. Customs and Border Protection ("CBP") be made available on the docket.[1]

## Background

On February 20, 2026, the U.S. Supreme Court ruled in *Learning Resources, Inc. v. Trump* that President Trump lacked authority to impose tariffs under the International Emergency Economic Powers Act ("IEEPA"), and that those tariffs were therefore invalid. 607 U.S. -- , 146 S. Ct. 628 (2026). The ruling has enormous financial implications for U.S. importers. From the time that the IEEPA duties were imposed until the *Learning Resources* ruling, the federal government had collected approximately $166 billion in tariff revenue.

On April 6, 2026, Your Honor granted the notice of dismissal in *Atmus Filtration Inc. v. United States*, previously the lead case seeking tariff refunds under IEEPA. The following day, on April 7, 2026, this Court entered an order *sua sponte* lifting the stay in *Euro-Notions Florida, Inc.*

---

[1] The News Organizations advised counsel for the parties that they intended to file a letter seeking access to today's conference. Plaintiff's counsel indicated that Plaintiff takes no position on the request. Defendants' counsel did not respond before this filing.

**DWT.COM**

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Hon. Richard K. Eaton
April 14, 2026
Page 2

*v. United States*. *See* ECF No. 9. This Court also entered an order noting that Euro-Notions Florida, Inc.'s entries were "among the millions of entries that were entered subject to IEEPA duties, which the Supreme Court ruled unlawful" in *Learning Resources* and directing CBP to refund all IEEPA duties. ECF No. 12 at 1, 3. This Court further directed CBP to file a short report by 12pm on April 14, 2026, describing the progress it has made toward the development of a Consolidated Administration and Processing of Entries ("CAPE") system. *See* ECF No. 13 at 1. The CAPE system is designed to consolidate and streamline the submission and processing of tariff refund requests. Finally, this Court scheduled a closed conference for April 14 at 3pm and directed that it "will not be open to the public." *Id.* at 2.

## Right of Access Grounded in First Amendment and Common Law

The public has a right of access to court records (including submissions made to this Court by CBP) and court proceedings, grounded in both the First Amendment and the common law. "Transparency – not secrecy – is the default rule." *CVB, Inc. v. United States*, 681 F. Supp. 3d 1313, 1317 (Ct. Int'l Trade 2024), *appeal dismissed sub nom. In re United States*, 166 F.4th 978 (Fed. Cir. 2026).

The United States Supreme Court has made clear that the First Amendment provides a "presumption of openness" to judicial proceedings and documents that "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984). Openness of judicial processes and documents "gives assurance that established procedures are being followed and that deviations will become known" and corrected. *Id.* at 508. The constitutional presumption in favor of access requires "the most compelling circumstances" to justify any restriction upon that right, *In re Application of Nat'l Broadcasting Co.*, 635 F.2d 945, 952 (2d Cir. 1980), and requires "specific, on the record findings" that sealing or courtroom closure "is essential to preserve higher values and is narrowly tailored to serve that interest" under the First Amendment, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citations and internal marks omitted). It does not appear from the docket that the Court has made the requisite "specific, on the record findings" supporting closure of the courtroom here or in the related *Atmus Filtration* case. *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8–14 (1986).

The common law right of access is likewise well-established and similarly creates a strong presumption of openness. "The tradition of public access to judicial proceedings predates the English common law, dating back to Ancient Rome." *OCP S.A. v. United States*, 776 F. Supp. 3d 1245, 1261 (Ct. Int'l Trade 2025), *aff'd sub nom. In re United States*, 166 F.4th 1001 (Fed. Cir. 2026). In the United States, as the Federal Circuit has held, "[t]here is a strong presumption in favor of a common law right of public access to court proceedings." *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978)). The presumption of access helps "ensur[e] the integrity of judicial proceedings," *Cal. Steel Indus., Inc. v. United States*, 747 F. Supp. 3d 1351, 1355 (Ct. Int'l Trade 2024) (quoting *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017)), and is "a

Hon. Richard K. Eaton
April 14, 2026
Page 3

fundamental element of the rule of law," *id.* at 1054 (quoting *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021)). A party seeking to restrict access to court records or court proceedings bears a "heavy burden of overcoming the presumption of open judicial records": Only a "compelling justification" will overcome the presumption. *Pratt & Whitney Canada Inc. v. United States*, 14 Cl. C. 268, 274–75 (1988). And, even if limited portions of the conference or filings here will contain trade secret or other highly confidential information the disclosure of which would cause competitive harm, any "closure must be no broader than necessary to protect" that confidentiality interest. *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 304 (2d Cir. 2012). Full closure of the conference and wholesale sealing of filings do not comport with the common law right of access.

Both the First Amendment and the common law right of access thus protect the public's right to view judicial records and attend court proceedings—a right that is necessary to promote accountability in the judicial process and encourage public confidence in the administration of justice. It is not enough that the parties may prefer to keep their filings under seal or close the courtroom to the public, as parties may not simply "agree to secrecy." *CVB*, 681 F. Supp. 3d at 1316–17.[2] "[T]he federal judiciary has 'an independent duty to protect the public's right of access.'" *Cal. Steel Indus.*, 747 F. Supp. 3d at 1356 (quoting *DePuy Synthes Prods., Inc. v. Veterinary Orthopedia Implants, Inc.*, 990 F.3d 1364, 1370 (Fed. Cir. 2021)); *see id.* at 1354 ("[C]ourts are duty-bound to protect public access to judicial proceedings and records.") (quoting *Binh Hoa Le*, 990 F.3d at 417). Indeed, "[c]ourts must have the power to enforce the right of public access because the parties have no incentive to maintain transparency." *OCP S.A.*, 776 F. Supp. 3d at 1261–62.

### The Public's Right to Access In These Specific Proceedings

Here, the public's right of access is particularly weighty. *First*, CBP's development of a refund system for the now-invalidated tariffs is a subject of intense and legitimate public interest. Indeed, as Your Honor recognized, "*millions* of entries [] were entered subject to IEEPA duties" that now need to be refunded. ECF No. 12 at 1 (emphasis added). An order in *Euro-Notions Florida* can have very broad consequences for importers nationwide, rendering it imperative that the public know what information the Court is relying upon. *See*, *e.g.*, *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (weight of presumption of access turns on "the role of the material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring the federal courts") (citation omitted). Likewise, considering that the U.S. government unlawfully collected roughly $166 billion in duties, and a

---

[2] To be sure, "[a] common justification for overcoming the right of access to judicial records is that the records contain trade secrets." *Pratt & Whitney Canada*, 14 Cl. Ct. at 275. In other, "very limited circumstances, privacy interests can outweigh the public's right of access to judicial records." *Id.* But in such cases, the Court must ensure that "only those documents" or those portions of court proceedings that contain trade secret or highly sensitive private information "are sealed." *Id.* at 276. "Sealing of entire proceedings, including orders, hearing transcripts and pleadings is rarely, if ever, justified." *Id.*

Hon. Richard K. Eaton
April 14, 2026
Page 4

not-insubstantial portion of those funds will likely be refunded to affected parties, it is imperative that the public understand the processes and decision-making behind which importers' claims are accepted and which are denied.[3]

*Second*, "[t]he right of public access is all the more important when the case involves a 'public entity or official'" like CBP. *OCP S.A.*, 776 F. Supp. 3d at 1262 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1993)); *see Smith v. U.S. Dist. Ct. for S. Dist. of Illinois*, 956 F.2d 647, 650 (7th Cir. 1992) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party . . . .") (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). "Citizens can only hold their Government accountable if they know what that Government is doing." *CVB*, 681 F. Supp. 3d at 1322. Because "public monitoring is an essential feature of democratic control," *Cal. Steel Indus.*, 747 F. Supp. 3d at 1355 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)), public access to court proceedings involving public officials or public entities specifically "undergirds the American experiment in self-government," *id. Euro-Notions Florida*—like *Atmus Filtration Inc. v. United States* and the many other tariff refund cases pending in this Court—involves the government as a party. It is therefore "all the more important" that the public and the press be permitted to review CBP's written and oral submissions to fulfill their monitoring function. *OCP S.A.*, 776 F. Supp. 3d at 1262.

For all these reasons, the News Organizations respectfully request that the April 14 conference be opened to the public and the press and that any filings by CBP be made available on the docket. Should the Court believe that a "compelling justification" exists for closing the courtroom to the public for some portion of the proceedings, *Pratt & Whitney Canada*, 14 Cl. C. at 274—on April 14 or on any future date—the News Organizations request that the Court afford the News Organizations, other press, and the public in general an opportunity to be heard to voice their objections to closure, if any. Finally, any restriction on the public's right of access to the

---

[3] The News Organizations are aware that the April 14 court conference is referred to on the docket as a "settlement conference." But we understand that today's conference is likely to be focused on more than just settling this particular case. *See Press-Enterprise*, 478 U.S. at 7 ("[T]he First Amendment question cannot be resolved solely on the label we give the event."). Indeed, although the Court described three of the prior conferences in *Atmus Filration* as a "settlement conference," the resulting orders have affected all of the IEEPA refund cases by suspending compliance with the order directing liquidation of "any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court . . . without regard to the IEEPA duties," and directing the government to file reports "describing the progress Customs has made toward the development of a process to issue refunds of IEEPA duties paid with interest" for all affected importers. *See Atmus Filtration, Inc. v. United States*, Case No. 1:26-cv-01259 (Ct. Int'l Trade), ECF Nos. 33, 34, 40 & 49; *see also Euro-Notions Florida, Inc. v. United States et al.*, Case No. 1:25-cv-00595-RKE (Ct. Int'l Trade), ECF Nos. 12 & 13. As such, it is the News Organizations' understanding that discussions at the April 14 conference are likely to have significance well beyond the claims of that one particular importer. That is precisely the kind of government decision-making that demands public oversight and accountability.

Hon. Richard K. Eaton
April 14, 2026
Page 5


*Euro-Notions Florida* proceedings and related proceedings going forward must be supported by specific, on-the-record findings, and closure must be narrowly tailored—for example, by providing for prompt public disclosure of a hearing transcript with only limited redactions—to serve a compelling interest.

We thank the Court for its attention to this matter. Should the Court have any questions about this application, we are of course happy to appear to address them.

Respectfully Submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/ Russell Semmel*

Russell Semmel
Jeremy Chase
Alexandra Perloff-Giles

cc:    Attorneys of Record (via ECF)