UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: RICHARD K. EATON, JUDGE

| | |
|---|---|
| EURO-NOTIONS FLORIDA, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*. | Court No. 25-00595 |

*AMICUS CURIAE* BRIEF OF
THE INTERNATIONAL TRADE SURETY ASSOCIATION
IN SUPPORT OF MODIFICATION OF THE CAPE REFUND SYSTEM
<u>PROPOSED BY DEFENDANT</u>

INTRODUCTION

This amicus brief is filed on behalf of International Trade Surety Association (ITSA), an association whose members issue the surety bonds that secure the tariffs on importation of goods. Our members have paid millions of dollars to U.S. Customs & Border Protection ("Customs") on entries where importers (or their brokers) have failed to pay estimated or liquidated tariffs issued under the authority of the International Emergency Economic Powers Act ("IEEPA").

We file this brief and seek to appear as amicus so that the Court can be fully informed about the need to include sureties in Phase One of the CAPE refund program should it (or any other refund program) be approved by the Court. Customs has not included (or even mentioned) sureties in its development of CAPE and its reports to this Court, despite the fact that limiting refunds to importers and brokers will inevitably lead to IEEPA tariff refunds being issued to importers, instead of to the sureties who actually paid the IEEPA tariffs directly to Customs.

We are compelled to reach out directly to the Court because we have advised Customs of the need to include sureties in Phase One of CAPE. While Customs has acknowledged our

1

concerns, they have not indicated to us that the omission will be corrected, nor has Customs mentioned sureties or this issue in its presentations to the Court.

## ARGUMENT

This brief is filed on behalf of *amici* who represent the U.S. Treasury certified surety companies (and their agents) responsible for the vast majority of surety bonds on file with Customs to secure import obligations, including the IEEPA duties which are involved in this action. *Amici* is a surety association who has worked directly and closely with Customs to assure that the Customs bond program is administered in a way that sureties can meet their financial and fiscal responsibilities to Customs and to the Treasury Department, while making bonds reasonably available to all importers to support the immediate and timely delivery of goods into the commerce of the United States while securing the obligations to later deposit and pay duty, taxes and fees, redeliver, export or destroy goods which are found to be inadmissible, and pay liquidated damage penalties as appropriate for regulatory defaults.

Indeed, the same Act of the First Congress that created Customs permitted importers "to secure [the payment of duties owed on imported goods] by bond, with one or more sufficient sureties, to be approved of by the collector"; the collectors, in turn, were empowered to collect on these bonds. Act of July 31, 1789, §§ 19–21, 1 Stat. 29, 42. That remains true today. As required by modern-day law and regulation, *see* 19 U.S.C. § 1623; 19 C.F.R. Part 113, sureties that issue customs bonds to importers are identified on each and every entry filed with Customs and are jointly and severally liable with importers for duty, tax, fees from the time of entry. Where importers fail to pay estimated or liquidated duty, tax and fees, the surety makes payment to Customs. The obligation for sureties to pay tariffs includes the tariffs that were imposed under

IEEPA.  As of this date, sureties who are members of ITSA have in fact paid millions of dollars in IEEPA tariffs that importers failed to pay.

ITSA has served as the voice of the customs surety bond industry since 1984.  It represents surety and insurance professionals who underwrite more than 70% of the bonds that enable international trade.  Through administrative, legislative, and judicial fora, and with the trade community, ITSA advocates for consistent, fair, and efficient administration of the laws and regulations which impact the international supply chain.  This Court has accepted *amicus curiae* briefs from ITSA before in matters impacting the customs surety bond industry, such as in *United States v. Aegis Security Ins. Co.*, Court No. 20-03628.

This Court has embodied that same mission.  Through its orders, this Court has cut to the quick and ensured that Customs, in keeping with the government's promises throughout the IEEPA tariff litigation, will soon begin refunding the IEEPA tariffs that it unlawfully collected.  Specifically, Customs' "CAPE" system, thanks to this Court's efforts, promises to provide relief to all those who paid IEEPA tariffs to Customs.

ITSA submits this *amicus curiae* brief, however, to highlight an issue that Customs has overlooked in its development of "Phase One" of CAPE and that must be resolved before it is deployed:  Customs risks violating its own regulations by providing refunds to persons other than those to whom a refund is due.  Specifically,  under 19 C.F.R. § 24.36(a), "[w]hen it is found upon, or prior to, liquidation or reliquidation of an entry … that a refund … is due, a refund shall be prepared *in the name of the person to whom the refund is due*, as determined under paragraphs (b) and (c) of this section[.]"  (Emphasis added.)   Paragraph (b) in turn provides that "[r]efunds … shall be certified for payment to the importer of record *unless* … a surety submits evidence of

payment to Customs, upon default of the principal, of amounts previously determined to be due on the same entry or transaction." *Id.* § 24.36(b) (emphasis added).

This requirement highlights a significant flaw in the current design of CAPE as described in Customs' status reports: CAPE Phase One limits refund submissions to importers and customs brokers, and allows refunds to be directed to parties designated in a Form 4811. This design would allow defaulting importers—indeed, even insolvent or fraudulent importers—to receive refunds of estimated and supplemental IEEPA tariffs which were paid to Customs by a surety, thereby depriving the sureties of timely and appropriate refunds.

Including sureties in the refund process is critical. Sureties have paid millions of dollars in estimated and supplemental IEEPA tariffs on behalf of defaulting importers of record. Under CAPE's current design, a defaulting importer would submit entry information, Customs' automated system would show the duties as paid, and the refund would be issued to the importer (or broker). This scenario is not hypothetical. Our members have repeatedly experienced situations where importers received refunds that were rightfully owed to the surety (i.e., in entries prior to IEEPA tariffs).

It should not be difficult for Customs to include sureties in Phase One. Although sureties do not have visibility into entry line-item data even for transactions involving bond claims, Customs can readily identify and verify surety payments using its internal data. Customs has in fact advised in the past that its internal systems retain information identifying the party that originally paid the duties. Incorporating this data into Phase One would allow refunds to be issued to the correct party without requiring additional visibility into entry-level details.

Nor can this issue be deferred to a subsequent phase of CAPE development. The next phases are intended to address various other entry types and situations. Phase One, however,

addresses the standard, uncomplicated entries where duties are paid by importers, brokers and sureties. If surety payments are not included in Phase One, refunds will inevitably be misdirected to the importer or broker, rather than the surety that paid. Issuing a refund to the wrong party does not extinguish Customs' legal obligation under its own regulations to pay the correct party. *See, e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (holding that agencies must abide by their own regulations).

Furthermore, permitting sureties to participate in Phase One is in Customs' interest. Issuing refunds to the wrong party not only creates compliance risks but also increases administrative burdens and financial exposure. Timely refunds to sureties are lawfully required, most efficiently done in Phase One, and will help assure obligations of an effective surety program.

ITSA notes that it has moved for leave to file this *amicus curiae* brief only after raising these issues with Customs by letter and email, to no avail. Customs did reach out to ITSA members to identify the entries for which they paid IEEPA tariffs, so that those entries could be *removed* from Phase One. But Customs has apparently not developed programming in CAPE to identify, remove or refund surety payments; has provided no confirmation that surety-identified entries will in fact be removed from Phase One' and more importantly, still appears to be excluding sureties from Phase One. All Customs has done is *suggest* to importers and brokers that they "should ensure that they do not submit a CAPE Declaration for entries on which a surety paid IEEPA duties in whole or in part." CSMS #68340863 (Apr. 13, 2026). At the very least, ITSA urges that Phase One address the surety refund issue (particularly the refunding of surety payments to defaulting importers) and that surety refunds be issued in Phase One or the next phase of CAPE.

In short, the surety industry, through the age-old customs bond, protects the government's interests in collecting revenue and securing compliance. As a vital part of the trade community, sureties should be included in Phase One, rather than relegated to chasing after IEEPA tariff refunds unlawfully issued by Customs to delinquent importers.

Dated: April 17, 2026

Respectfully submitted,

<u>/s/ Gilbert Lee Sandler</u>
Gilbert Lee Sandler
**SANDLER, TRAVIS & ROSENBERG, P.A.**
5835 Waterford District Drive
Suite 200 & 204
Miami, Florida 33126
(305) 894-1000
LSandler@strtrade.com

6