**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| EURO NOTIONS FLORIDA, INC., | |
| Plaintiff, | |
| v. | Court No. 25-00595 |
| UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Border Protection, | |
| Defendants. | |

**MOTION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE***

1.      Pursuant to Rules 7(b) and 76 of the Rules of the United States Court of International Trade ("USCIT Rules"), Hausfeld LLP; Nematzadeh PLLC; Barrett Law Group, P.A.; Gordon Ball PLLC; Cuneo Gilbert Flannery & LaDuca, LLP; and McSweeney Cynkar & Kachouroff, PLLC ("proposed *Amici*"), counsel for a putative class of businesses and individuals ("tariffed payors") who paid tariffs pursuant to the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. § 1701 *et seq.*),  respectfully move for leave to file a brief as *amici curiae* in this proceeding.

**I.      INTRODUCTION**

2.      Between 2025 and 2026, through a series of executive orders issued by President Donald Trump, the United States Government collected approximately $170 billion or more in tariffs and duties through IEEPA. Individuals and businesses that purchased goods overseas or paid for imported goods bore the brunt of these tariffs' economic costs. As alleged in the complaint filed by the proposed *Amici* in the United States Court of Federal Claims ("CFC"),

1

these "tariffed payors" at issue paid IEEPA-based charges either directly to United States

Customs and Border Protection ("CBP") at ports of entry or, in effect, to the United States

through discrete and identifiable IEEPA line items billed and collected by importers of record.

3.      On February 20, 2026, the United States Supreme Court held that the IEEPA

tariffs were unlawful. *See Learning Resources, Inc. v. Trump*, No. 24-1287, 2026 WL 477534

(U.S. Feb. 20, 2026) ("*Learning Resources*"). In the aftermath of that ruling, various importers of

record have filed actions in this Court to recover IEEPA tariffs, including in this case. But the

rights of tariffed payors—who either paid duties directly to CBP at United States ports of entry

or paid discrete and identifiable IEEPA-tariff charges collected by importers of record—are

neither represented nor advocated in this action. As this Court oversees a uniform, centralized,

and expeditious refund process to disburse billions of dollars in IEEPA refunds, the single largest

group of rightful claimants to those funds lacks a voice here.

4.      Meanwhile, proposed *Amici* have filed suit in the CFC (*H.M. Nabavian & Sons,

Inc. v. United States,* No. 1:26-cv-000414-EMR (Fed. Cl.) ("*Nabavian*") and seek to represent

this Class of tariffed payors. A copy of that complaint is attached as an exhibit to this brief.

Members of the proposed Class allege that monies collected by reason of the unlawful

application of IEEPA constitute illegal exactions, and the named plaintiff and the proposed Class

in the case seek relief under the Tucker Act (28 U.S.C. § 1491) and the Little Tucker Act (28

U.S.C. § 1346). In tandem with the CFC action, proposed *Amici* seek leave to file an *amicus*

brief here to urge modest, targeted modifications to CBP's Consolidated Administration and

Processing of Entries ("CAPE") refund process within its Automated Commercial Environment

system, so that all valid claims—for both importers of record in this Court and tariffed payors in

the CFC—have an appropriate forum for vindication.

5.    Specifically, proposed *Amici* seek leave to file an *amicus* brief arguing that this Court should modify its prior orders and:

(i)    Direct CBP to modify the importer declaration and refund process described in the April 28, 2026 Declaration of Brandon Lord (ECF No. 26), so that importers of record must certify the extent to which they collected discrete and identifiable IEEPA tariffs from individuals and businesses;

(ii)    Direct CBP and the United States Department of the Treasury to identify and reserve IEEPA duty refunds that correspond to those importer-certified IEEPA tariff amounts, for purposes of satisfying claims brought by Proposed *Amici's* proposed Class of tariffed payors in the CFC; and

(iii)    Direct CBP to share data regarding such identified and reserved amounts with Proposed *Amici*, or with the judge presiding over the putative class action in the CFC, so that the CFC may grant full and final relief to the named plaintiff and the proposed Class if they prevail.

6.    The Court should grant leave because:

●    Proposed *Amici* represent interests that will be materially affected by this Court's decisions, yet are not otherwise represented by the parties;

●    Proposed *Amici* will offer input useful to the Court in crafting a refund process that can accommodate the mutually compatible legal claims of tariffed payors and importers of record; and

●    The proposed modifications to the March 6 Order will forestall a second wave of piecemeal litigation that would undermine the efficiencies this Court seeks through the CAPE refund process and could produce inconsistent adjudications of tariffed payors' claims to money the United States Government plainly owes them.

## II.    LEGAL STANDARD

7.    Pursuant to USCIT Rule 76, the Court may allow an *amicus curiae* to file a brief on motion or on the Court's own request. *See* USCIT Rule 76; *Ass'n of Am. Sch. Paper Suppliers v. United States*, 34 C.I.T. 207, 683 F. Supp. 2d 1326, 1327 (2010) ("*Sch. Paper*"). The decision rests within this Court's sole discretion. *Changzhou Hawd Flooring Co. v. United States*, 38 C.I.T. 813, 6 F. Supp. 3d 1353, 1356 (2014) ("*Changzhou*").

3

8.      There are no rigid prerequisites for *amicus* status. *Irving Paper Ltd. v. United States* 296 F. Supp. 3d 1369, 1373 (2018) ("*Irving Paper*"). But this Court has considered five factors in deciding whether to recognize a movant as *amicus*: (1) whether the proposed *amicus* will present an interest and a view not otherwise represented; (2) whether any party opposes the *amicus's* participation; (3) whether existing counsel can adequately present the arguments without an *amicus*; (4) the strength of the information and argument that the proposed *amicus* will present; and (5) the usefulness of that information and argument. *See Sch. Paper*, 683 F. Supp. 2d at 1328 (citing *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 355, 357 (2006)).

9.      Proposed *Amici* submit that all five factors favor granting leave to file the proposed *amicus* brief here.

III.    **ARGUMENT**

A.      **Factor 1: Proposed *Amici* advocate for interests "not otherwise represented" in this case.**

10.     This Court has clarified that "there is no requirement that an amicus be a disinterested party." *Irving Paper*, 296 F. Supp. 3d at 1373. That clarification reconciles USCIT Rule 76's requirement that a movant "identify [its] interest" with any suggestion that an *amicus* must somehow be disinterested. As the Court has observed, "it is not easy to envisage an amicus who is disinterested but still has an interest in the case." *Changzhou*, 161 F. Supp. 3d at 1347.

11.     Here, proposed *Amici* seek to present "a different viewpoint on a central issue to the case." *Irving Paper*, 296 F. Supp. 3d at 1374. That viewpoint is that the CAPE refund infrastructure, as currently designed, requires modest, targeted modification to account for refunds due to tariffed payors, none of whom is present in this litigation. The scope and direction of IEEPA tariff refunds are, if not the central issue, then among the central issues in this action. Tariffed payors—individuals and businesses that paid the United States Government directly or

in effect—suffered concrete economic injury. Yet their interests are not represented here. Proposed *Amici*, representing a putative class of tariffed payors, thus present an "interest and a view that is 'not otherwise represented' in this case." *Id.*

12.    The case for *amicus* status is strongest when the movant has interests in another case that may be affected by the Court's decision. *See id.* at 1373. This Court has explained that an *amicus* brief "will assist the court more in instances in which the would-be *amicus* has a direct interest in another case that may be materially affected by a decision in this case." *Id.* (quoting *Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) ("*Voices for Choices*")).

13.    If CAPE continues to have a refund framework that does not account for the largest directly harmed group of identifiable tariffed payors, its decision will materially affect—and may irreparably prejudice—the putative class of tariffed payors that proposed *Amici* represent in the CFC. Where the rights of a nationwide class potentially numbering in the millions hang in the balance, the need to consider proposed *Amici's* arguments is at its apex. This factor strongly favors granting leave.

**B.    Factor 2: Proposed *Amici* are unaware of any opposition, and their interests are non-adverse.**

14.    Pursuant to the second factor, proposed *Amici* are not aware of any opposition to this motion. They represent a putative class of tariffed payors whose claims are not adverse to the plaintiff in this case. The relief sought in the CFC does not duplicate or conflict with the relief that importers of record seek in this forum. Proposed *Amici's* client and the putative Class seek to recover only discrete and identifiable IEEPA tariffs that tariffed payors paid directly to CBP at United States ports of entry or, in effect, to the United States Government through importers of record acting as collection conduits. Proposed *Amici* do not seek to recover any portion of IEEPA duties where importers of record themselves bore the cost.

5

15.     Nor do proposed *Amici* seek to "pre-litigate" the merits of their CFC claims in this Court. *See Irving Paper*, 296 F. Supp. 3d at 1374. The United States government is expected to file a motion to dismiss the claims in *Nabavian* on June 15, so the Court in the CFC will soon be determining whether those claims have been sufficiently pled. Instead, they seek to "present an analysis of this issue not already represented by the parties in this action" (*id.*) and ask only that the Court modify its March 6 Order so that tariffed payors may vindicate their rights in a parallel proceeding.

16.     Thus, even if some opposition emerges, this factor should be weighed against the others. Given the usefulness of the perspective that proposed *Amici* will provide, the second factor favors granting leave, or is at least neutral.

**C.     Factor 3: Existing counsel cannot present proposed *Amici's* arguments.**

17.     Under the third factor, the Court considers whether existing counsel can advance the arguments that the proposed *amicus* intends to make. A quintessential justification for *amicus* participation arises when the *amicus* presents an "alternate analysis" that is materially different from the parties' positions. *Irving Paper*, 296 F. Supp. 3d at 1374.

18.     In *Irving Paper*, the parties disputed which statutory provision authorized the Department of Commerce to act, but both assumed that the statute supplied some authority. The proposed *amici* in that case sought to argue that the statute provided no authority at all. The Court held that this argument represented a distinct position on a critical issue. *Id.* at 1374–75.

19.     Here, importers of record assert that IEEPA duties must be repaid to them; the United States has expressed concern over the timing of such repayments and has publicly raised issues about the amounts owed to such importers. Neither side, however, has an incentive to advance arguments on behalf of individual and corporate tariffed payors, because neither side

here represents their interests. Proposed *Amici* thus intend to present arguments "that are not to be found in the parties' [filings]." *Voices for Choices*, 339 F.3d at 545. They will urge modest, targeted modifications to its prior orders  so that the CAPE refund process fully accounts for tariffed payors' rights and the class claims being litigated in the CFC.

20.      These arguments offer a "unique perspective or specific information that can assist the court beyond what the parties can provide." *Id.* (citing *Nat'l Org. for Women, Inc. v. Schedler*, 223 F.3d 615, 616–17 (7th Cir. 2000)). The third factor therefore favors granting leave.

**D.      Factors 4 and 5: Proposed *Amici* will provide useful information for the equitable administration of the CAPE refund regime.**

21.      The fourth and fifth factors evaluate the strength and usefulness of the information and arguments that proposed *Amici* will present here—factors this Court has described as "intertwined" and "the most important." *Irving Paper*, 296 F. Supp. 3d at 1375; *Sch. Paper*, 683 F. Supp. 2d at 1328. These factors are satisfied when an *amicus* offers information or arguments that will "assist the court in its review of the issues [and] that are not to be found in the parties' [filings]." *Irving Paper*, 296 F. Supp. 3d at 1375. Proposed *Amici's* participation will satisfy these factors in several ways.

22.      ***First*, proposed *Amici's* participation will help ensure that refunds track Article III injury**. Proposed *Amici* represent the putative Class of tens of millions of tariffed payors in the CFC. These tariffed payors were concretely harmed by the unlawful exaction of IEEPA duties. Their rights merit adjudication, and any decision this Court makes regarding importers of record will substantially affect tariffed payors' ability to recover.

23.      Importers of record generally lack standing to obtain refunds of IEEPA duties that they collected from tariffed payors while acting as collection conduits for the Government. Yet the Court's various orders contain no process to protect tariffed payors' claims where importers

did not bear the tariffs' economic incidence. As a result, many importers may lack standing to pursue certain refunds because the injury-in-fact lies with the tariffed payors.

24.    Proposed *Amici* will offer a practical method for this Court to implement core Article III standing principles within the CAPE refund framework, ensuring that repayment relief flows to those who were concretely injured.

25.    ***Second*, proposed *Amici's* participation will promote a uniform, centralized refund process that avoids a second wave of litigation over the same funds.** CBP has disclosed that there are more than 330,000 importers of record and tens of millions of duty entries. Without a uniform dataset that accounts for tariffed payors' interests, the Court risks inconsistent outcomes and the loss of centralized oversight.

26.    Specifically, absent the modest, targeted modifications that proposed *Amici* will propose, the current CAPE refund regime allows all IEEPA duty repayments to flow to importers of record—without any inquiry into whether those importers actually bore the economic cost and, if not, who did. That outcome would inevitably spur a second wave of decentralized "refund-of-refund" litigation in federal and state courts, as tariffed payors seek to reclaim funds from thousands of importers. That litigation would be resource-intensive, produce inconsistent outcomes, and require extensive appellate oversight.

27.    The Court can avoid that scenario by making limited adjustments to the CAPE refund process so that a separate tariffed payors claims process in the CFC has the necessary data to administer refunds to that much larger group of claimants. Proposed *Amici's* brief will identify those specific modifications, thereby allowing this Court to resolve importer claims here while preserving the adjudication of all claims by tariffed payors in one coordinated action before the CFC.

28.     ***Third***, **proposed *Amici's* participation will promote judicial economy, equity, and interjurisdictional comity.** Proposed *Amici* will propose that this Court build a certification, reservation, and coordination requirement into the existing CAPE refund regime. Doing so will not require this Court to decide class member standing or class certification questions pending before the CFC. Nor will the proposed modifications derail or obstruct the refund process this Court is developing.

29.     Instead, with the benefit of proposed *Amici's* briefing, the Court can recognize two—and only two—litigation tracks: (1) importer actions in this Court, and (2) a tariffed payor class action in the CFC, both drawing from a single remedial fund, which is allocated based on the merits of each set of claims.

30.     ***Fourth***, **proposed *Amici's* participation will help ensure that IEEPA tariff refunds reach those who were actually injured.** As currently designed, the CAPE refund process risks spawning a second wave of scattered "refund-of-refund" litigation brought by tariffed payors whose rights are not protected—or even addressed—in this action. Proposed *Amici's* arguments and suggested modifications will help the Court avoid that inefficient outcome by fashioning a claims process that equitably divides a single remedial fund between importers of record with cognizable claims here and a class of tariffed payors with cognizable claims in the CFC.

31.     In sum, proposed *Amici* seek to present essential arguments and concrete proposals that will help this Court craft a uniform and efficient CAPE refund process—one capable of resolving all meritorious claims for IEEPA tariff refunds while conserving judicial and litigant resources. The fourth and fifth factors therefore favor granting leave.

## IV.    CONCLUSION

32.    For these reasons, proposed *Amici* respectfully request that the Court grant them leave to file the proposed brief and consider the arguments made in that brief in overseeing the IEEPA tariff refund process.

Dated: <u>June 17, 2026</u>                                        Respectfully submitted,


<u>*/s/ Mary Sameera Van Houten Harper*</u>
Mary Sameera Van Houten Harper *(admitted)*
Michael D. Hausfeld (*pro hac vice forthcoming*)
John Thompson (*pro hac vice forthcoming*)
HAUSFELD LLP
1200 17th Street N.W.
Washington, DC 20036
(202) 540-7200
mvanhouten@hausfeld.com
mhausfeld@hausfeld.com
jthompson@hausfeld.com

Scott A. Martin (*pro hac vice forthcoming*)
Kartik S. Madiraju (*pro hac vice forthcoming*)
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
(646) 357-1100
smartin@hausfeld.com kmadiraju@hausfeld.com

Michael P. Lehmann (*pro hac vice forthcoming*)
HAUSFELD LLP
580 California Street, 12th Floor
San Francisco, California 94104
(415) 633-1908
mlehmann@hausfeld.com

Justin S. Nematzadeh (*pro hac vice forthcoming*)
NEMATZADEH PLLC
1129 Northern Boulevard, Suite 457
Manhasset, NY, 11030
(646) 799-6729
jsn@nematlawyers.com

John W. ("Don") Barrett (*admitted*)
Katherine B. Riley (*pro hac vice forthcoming*)
Sterling Aldridge (*pro hac vice forthcoming*)
BARRETT LAW GROUP, P.A.
404 Court Square North
P.O. Box: 927
Lexington, MS 39095
(662) 834-2488
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com
saldridge@barrettlawgroup.com

Gordon Ball (*pro hac vice forthcoming*)
GORDON BALL PLLC
322 31st Avenue N #113
Nashville, TN  37203
(865) 525-7028
gball@gordonball.com

Charles J. LaDuca (*pro hac vice forthcoming*)
Charles Barrett (*pro hac vice forthcoming*)
CUNEO GILBERT FLANNERY & LADUCA,
LLP
2445 M Street NW
Suite 740
Washington, DC  20037
(202) 789-3960
charlesl@cuneolaw.com
cbarrett@cuneolaw.com

Robert J. Cynkar (*pro hac vice forthcoming*)
MCSWEENEY CYNKAR & KACHOUROFF,
PLLC
3126 Elmendorf Drive
Oakton, VA 22124
(703) 621-3300
rcynkar@mck-lawyers.com

***Counsel for Proposed Amici***