**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| EURO NOTIONS FLORIDA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Border Protection,<br><br>Defendants. | Court No. 25-00595 |

### *AMICUS* BRIEF IN SUPPORT OF MODIFICATION OF CAPE ORDERS

1.      *Amici* Hausfeld LLP; Nematzadeh PLLC; Barrett Law Group, P.A.; Gordon Ball PLLC; Cuneo Gilbert Flannery & LaDuca, LLP; and McSweeney Cynkar & Kachouroff, PLLC (collectively, "*Amici*") respectfully seek modification of the Court's prior orders with respect to the Consolidated Administration and Processing of Entries ("CAPE") of the United States Customs and Border Protection's ("CBP") Automated Commercial Environment ("ACE") and ask the Court to:

(i)      direct the CBP to modify the CAPE importer-declaration and refund process described so that importers must certify the extent to which they collected payments of discrete charges from individuals and businesses who paid all or part of duties identifiable as required under the International Emergency Economic Powers Act ("IEEPA") (hereinafter, the "tariffed payors");

(ii)     direct CBP and the United States Department of the Treasury ("Treasury") to identify and reserve those portions of IEEPA duty refunds that correspond to the importer-certified IEEPA tariff payment amounts, pending further order of this Court or of another federal court with jurisdiction to adjudicate tariffed payor refund claims against the United States; and

(iii)    direct CBP to share data regarding such identified and reserved amounts with the Plaintiff in *H.M. Nabavian & Sons, Inc. v. United States,* No. 1:26-cv-000414-

1

EMR (Fed. Cl.) ("*Nabavian*"), so that the United States Court of Federal Claims ("CFC") may grant full and final relief to Plaintiff and the Class in that case if Plaintiff prevails.

2.    As shown below, these modest modifications to the CBP's CAPE program to process IEEPA refunds are necessary (i) to conform to the constitutional limits on importer standing; (ii) prevent refunding to importers costs that they did not bear; and (iii) preserve the portions of IEEPA duties collected from tariffed payors so that the CFC can, if warranted, resolve illegal exaction claims brought by those who actually paid them.

## I.    *AMICI'S* INTERESTS

3.    *Amici* are counsel for a putative class of tariffed payors (individuals and businesses that directly or in effect paid discrete, identifiable IEEPA tariff charges) in *Nabavian*, filed in the CFC on March 16, 2026. The Plaintiff in *Nabavian* seeks refunds from the United States of duties paid directly or in effect to the United States under the IEEPA tariff regime that the United States Supreme Court recently invalidated in *Learning Resources, Inc. v. Trump*, Nos. 24-1287 & 25-250, 2026 WL 477534 (U.S. Feb. 20, 2026). The plaintiff seeks relief on behalf of the following defined class of American individuals and businesses under the Tucker Act (28 U.S.C. § 1491 *et seq.*) and the Little Tucker Act (28 U.S.C. § 1346 *et seq.*):

> All individual citizens of the United States, or corporations organized under the laws of the United States, who: (a) purchased goods and paid IEEPA tariffs or duties directly to CBP customs agents at United States ports of entry; and/or (b) paid IEEPA tariffs or duties to importers of record, including, but not limited to, international couriers, in the form of discrete, identifiable charges or costs, billed, invoiced, or charged to them by importers of record assessing and collecting IEEPA tariffs or duties on behalf of the United States.

> Excluded from the Class are: (a) any entities that have filed, will file, or will be viewed as filing on their own behalf claims regarding the IEEPA tariffs before the Court of International Trade; (b) employees of the federal government and their families; (c) any judicial officer presiding over this action and their families; and (d) any individual or corporate entity that paid an allegedly higher price for a

2

good purchased from a merchant who increased the price of their goods to account for the cost of IEEPA tariffs.[1]

4.      For tariffed payors who paid IEEPA duties directly to United States customs agents, the illegal exaction claim is straightforward: CBP collected unlawful duties directly from those individuals, often on informal entries for which reliquidation in this Court is unavailable or impracticable, or both. For tariffed payors who paid the United States "in effect,"[2] the claim is that where importers of record collected payments of discrete charges that are identifiable as duties imposed under the IEEPA-tariff regime, and then remitted payment of those charges to CBP as IEEPA duties, the tariffed payors, not the importers, are those who suffered cognizable Article III injury. The tariffed payors, not the importers and therefore have standing to seek refunds from the United States. But for both groups, the principle is the same: the United States Government has repeatedly promised—both to the public and in this Court—that it would refund the money obtained through unlawful tariffs to those who paid them.[3] *Amici*'s requested relief is

---

[1] Both exclusions are designed to ensure that the proper parties and claims are channeled to the courts with the jurisdictional authority and institutional competence to hear them. The Court of International Trade ("CIT") and CFC will hear the public-law claims of importers of record and tariffed payors (including consumers), respectively, who actually paid the unlawful duties, while federal district courts will hear the private law claims—under state law contract and unjust enrichment theories—of consumers whose only alleged injury was paying higher prices to retailers that occurred subsequent to the IEEPA tariffs.

[2] *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) ("*Aerolineas*").

[3] *E.g.,* Ari Hawkins, *US could be forced to refund 'about half' of tariffs if SCOTUS rules against Trump, Bessent says*, Politico (Sept. 7, 2025), https://www.politico.com/news/2025/09/07/bessent-half-refund-tariffs-scotus-00549539?mc_cid=074587b5a9&mc_eid=10b4c024bf (quoting Treasury Secretary Scott Bessent from his appearance on "Meet the Press" as saying, if the Supreme Court invalidates the IEEPA tariffs, "We would have to give a refund on about half the tariffs, which would be terrible for the Treasury"); Reply Brief for Defendants-Appellants (ECF No. 147) at 33, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812 (Fed. Cir. July 18, 2025) (arguing that a universal injunction was unnecessary to afford plaintiffs complete relief because "[p]laintiffs' payment of allegedly unlawful tariffs would be completely remedied by a refund or party-specific

3

designed to ensure that the government makes good on that promise, while relieving both importers and other courts of the administrative burden associated with disbursing those refunds to tariffed payors.

5.      If the portions of IEEPA tariffs collected from tariffed payors are reserved rather than disbursed to importers, the CFC can adjudicate the tariffed payors' illegal exaction claims and, if they prevail, they can be made whole from that pool of reserved funds. If not, there is a substantial risk that the Government will successfully contest disbursement of the portions of the IEEPA refunds to importers collected from tariffed payors because the importers lack standing to obtain them in this Court. Indeed, Treasury Secretary Bessent has already alluded to this possibility by referring to such refunds as "the ultimate corporate welfare."[4]  And American consumers and businesses who actually paid the now-invalidated duties could be left stranded with unremedied constitutional injuries.

## II.      ARGUMENTS AND AUTHORITIES

### A.      Importers lack standing to obtain refunds for duty payments they collected from tariffed payors.

6.      In order to establish Article III standing, a plaintiff must demonstrate: (i) that it suffered a concrete, particularized injury in fact; (ii) a causal nexus between the injury and the conduct complained of; and (iii) judicial redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Subsequent Supreme Court decisions have reaffirmed this requirement. *See, e.g.,*

---

injunction"); Joint Stipulation (ECF No. 8) at ¶ 2, *PopSockets, Inc, v. United States,* No. 1:25-cv-00379-3JP (Ct. Int'l Trade Dec. 12, 2025) (memorializing government's promise to "refund any IEEPA duties found to have been unlawfully collected").

[4] Daniel Flatley, Bessent Says Tariff Refund Would Be 'Ultimate Corporate Welfare,' Bloomberg, Feb. 20, 2026, https://finance.yahoo.com/news/bessent-says-tariff-refund-ultimate-223942102.html.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (reaffirming that "injury in fact" requires a concrete and particularized invasion of a legally protected interest); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021) ("*TransUnion*") ("No concrete harm, no standing."). Under these principles, importers of record who—through discrete and identifiable charges imposed under the IEEPA—operated as *de facto* collection agents ("conduits") for payments to the government lack Article III standing to obtain refunds of those payments in this Court. They are not worse off in any concrete, pecuniary sense as a result of the IEEPA duties, and so have suffered no cognizable injury in fact. *See Perry Chem. Corp. v. United States*, 375 F. Supp. 3d 1324, 1330-31 (Ct. Int'l Trade 2019) ("*Perry*") (holding that because plaintiff "did not bear the economic burden" of antidumping duties, "it has not suffered an injury in fact" and therefore lacked Article III standing to challenge those duties).

7.      The Supreme Court has consistently required proof of concrete harm, not a bare statutory right or obligation, to establish Article III injury. In *TransUnion*, for example, the Court stressed this distinction between a legal obligation and concrete injury: "Congress may enact legal prohibitions and obligations. And it may create causes of action for plaintiffs to sue…. But under Article III, an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 426–27. As such, "only those plaintiffs who have been concretely harmed by a defendant's statutory violation" have standing to sue in federal court. *Id.* at 427.

8.      Here, mere status as importer of record, or a corresponding statutory duty to "pay" the IEEPA duties in the first instance, is not enough. What matters is whether the importer actually bore the economic burden of the unlawful duties. Where importers acted as collection conduits for the government, they did not bear that economic burden; the tariffed payors did. Requiring importers to certify the extent to which they collected IEEPA duties from tariffed

payors through discrete and identifiable IEEPA charges simply implements that core Article III principle. If tariffed payors—rather than the importer—bore the financial burden of the duties, then the importer has no injury in fact as to those amounts and no standing to obtain refunds in this Court.

**B.** **Principles of judicial economy, equity, and interjurisdictional comity support the relief requested here.**

9.    As set forth above, *Amici* request that this Court establish a certification, reservation, and coordination mandate into the existing CAPE refund process. In order to grant that relief, the Court need not decide which members of the putative class in the CFC, if any, have standing to recover the tariffed payors' share of the unlawful IEEPA duties. It need only avoid structuring the refund process in this forum in a way that assumes they do not and thereby effectively decides that question for the CFC before that court can hear it.

**1.** **Judicial economy favors certification, reservation, and coordination with the CFC rather than a sprawling wave of "refund-of-refund" litigation.**

10.    This Court has already recognized that a centralized mechanism is needed to manage IEEPA refunds efficiently and uniformly. In its March 4 order (ECF No. 21), the Court explained that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision invalidating those duties and directed CBP to liquidate and reliquidate non-final entries without regard to those duties, while emphasizing the need for uniformity and expeditious resolution of import-related disputes.[5]

---

[5] The CBP has sought a petition for a writ of mandamus from the Federal Circuit challenging the ability of this Court to issue a nationwide injunction with respect to importers seeking recoupment of IEEPA tariffs and raising the question of whether importers whose claims are liquidated have to file individual lawsuits to recover. At present, it is not clear how long the Federal Circuit will need to resolve this issue and whether a further appeal will be taken to the United States Supreme Court. This Court has expressed the view that it would prefer not to handle these cases through a class action mechanism. A motion by the government on the

11.      CBP, in turn, has told this Court that, as of March 4, 2026, more than 330,000 importers have paid roughly $170 billion in IEEPA duties across over 53 million entries, and that issuing refunds on an entry-by-entry basis is unworkable. Decl. of Brandon Lord, at ¶ 12 (ECF No. 31). CBP thus proposes:

- to "streamline and consolidate refunds and interest payments on an importer basis," using new ACE functionality under which importers file a single consolidated declaration;

- ACE validates entries and recalculates the duties without IEEPA tariffs;

- ACE automatically aggregates refunds with interest by importer and liquidation date; and

- Treasury issues refunds electronically.

*Id.* at ¶ 27. CBP estimates that this automated approach will save "over 4 million hours" compared with manual processing. *Id.* at ¶ 28.

12.      Requiring importers to certify the extent to which they collected payment of those duties from tariffed payors through discrete and identifiable IEEPA charges, and directing CBP and Treasury to reserve those certified portions, would serve the same efficiency goals. It places the burden on the parties best suited to bear it and ensures that, when CBP uses ACE to calculate and aggregate IEEPA refunds by importer, CBP also records which portions of those refunds correspond to duties for which importers did not bear the ultimate economic burden.

13.      If this Court authorizes CBP and Treasury to disburse the entire IEEPA-refund pool to importers without distinguishing between importer-paid and importer-collected duties, however, any later effort to sort out who is entitled to the portions of IEEPA tariffs collected from tariffed payors will be unnecessarily fragmented and lead to duplicative litigation. Tariffed

---

complaint in the CFC was filed on June 15. If the Plaintiff prevails, the rules of the CFC permit the dissemination of prompt notice to an opt-in Class. The *Nabavian* Complaint seeks only refunds of all monies illegally exacted by the United States from members of the opt-in Class.

7

payors who actually paid unlawful IEEPA duties will be driven into scattered "refund-of-refund" litigation against importers and carriers in courts across the country, where they will be forced to pursue relief under a disparate array of state common-law contract and unjust-enrichment theories. That outcome not only risks squandering the efficiencies this Court is striving to achieve through a centralized refund process, but also virtually guarantees inconsistent judicial determinations about the same underlying duty payments.

14.    By incorporating certification and reservation components into the refund process now, this Court can preserve a clearly defined pool of money collected from tariffed payors, avoid a second wave of fragmented litigation over the same dollars, and allow the CFC in adjudicating the tariffed payors' illegal-exaction claims to rely on CBP's centralized calculations rather than recreating them through costly, case-by-case discovery.

> **2.    Equity favors certification, reservation, and coordination to prevent leaving tariffed payors with unremedied constitutional injuries.**

15.    Principles of equity likewise support the limited relief *Amici* seek. This Court has found that CBP "has collected approximately $165 billion in duties" under the IEEPA-tariff regime and that "these duties must now be refunded with interest," with hundreds of millions of dollars in interest accruing each month if refunds are delayed. (ECF No. 34). At the same time, the government has repeatedly assured courts and the public that, if the IEEPA tariffs were invalidated, the sums obtained through those unlawful tariffs would be returned to those who paid them. *See supra* n. 3. That commitment is meaningful. Importers bore the economic burden of paying some portion of the IEEPA duties, and this Court's orders properly ensure that CBP will refund those amounts to them. But for the portion of IEEPA duties for which importers were collection conduits, the individuals and businesses entitled to refunds are the tariffed payors seeking relief in the CFC.

16.    Treasury Secretary Bessent himself has described the risk that, absent careful structuring, any IEEPA refund program will be "just…the ultimate corporate welfare" in which "the American people won't see [any refunds]."[6] Principles of equity do not require this Court to adjudicate the tariffed payors' illegal exaction claims; that's the CFC's job. Principles of equity do, however, strongly counsel against allowing CBP and Treasury to pay out  IEEPA duty refunds to importers who "did not bear the economic burden" of those charges and thus "have not suffered an injury in fact" (*Perry*, 375 F. Supp. 3d at 1330-31) while leaving those who actually paid the charges with no realistic path to relief against the United States.

17.    Requiring importer certification of duties they collected from tariffed payors and reserving those amounts for future disbursement in the CFC avoids that inequitable outcome. It also effectuates the Supreme Court's and this Court's commands that unlawful IEEPA duties be returned promptly to those who paid them.

### 3.    Comity between the CIT and the CFC favors certification, reservation, and coordination while preserving a merits determination of tariffed payors' illegal exaction claims for the CFC.

18.    Finally, principles of interjurisdictional comity support the requested relief. There is already a putative class action on file in the CFC seeking monetary relief from the United States under the Tucker Act and Little Tucker Act. That court will have to decide whether and to what extent tariffed payors can establish that they "paid money over to the Government, directly or in effect" to recover against the United States. *Aerolineas*, 77 F.3d at 1572-73.

19.    While that question is not this Court's to decide, comity principles require that the Court avoid structuring the IEEPA refund process in a way that effectively decides that question

---

[6] Eleanor Pringle, *Scott Bessent has 'got a feeling' that $175 billion raised under the IEEPA is lost to the American people for good*, Fortune (Feb. 23, 2026), https://fortune.com/2026/02/23/scott-bessent-tariff-supreme-court-ruling-refunds/.

in advance by: (a) "refunding" duties to importers who did not pay them, and so lack any Article III injury as to those sums; and (b) leaving the CFC to deal with the argument that the United States has already fully discharged whatever refund obligation it had, thereby mooting—or at least severely undermining—any illegal exaction claim by tariffed payors.

20.     By requiring importer certification of IEEPA duty payments collected from tariffed payors, reserving those amounts, and directing CBP to share the resulting data with the CFC under appropriate protective orders, this Court can:

- fulfill its own exclusive role in administering the IEEPA refund process in the first instance;

- preserve, without deciding, the merits questions pending before the CFC; and

- ensure that the government's promise to return unlawful duties to those who paid them is being honored in one federal forum or the other, rather than being effectively foreclosed by the mechanics of the refund process itself.

## III.    CONCLUSION

21.     For the foregoing reasons, *Amici* respectfully request that the Court modify its March 6, 2026 Order to: (a) require importers to certify, as part of the ACE refund process, the extent to which they collected from tariffed payors discrete charges that are identifiable as now-invalidated IEEPA tariff duties; (b) direct CBP and Treasury to identify and reserve the importer-certified portions of IEEPA duty refunds corresponding to those  payments; and (c) direct CBP to share data concerning such reserved amounts with the Plaintiffs in the related CFC action pursuant to appropriate protective orders.

DATED: June 17, 2026

/s/ *Mary Sameera Van Houten Harper*
Mary Sameera Van Houten Harper
Michael D. Hausfeld (*pro hac vice forthcoming*)
John Thompson (*pro hac vice forthcoming*)
HAUSFELD LLP
1200 17th Street N.W.
Washington, DC 20036

10

(202) 540-7200
mvanhouten@hausfeld.com
mhausfeld@hausfeld.com
jthompson@hausfeld.com

Scott A. Martin (*pro hac vice forthcoming*)
Kartik S. Madiraju (*pro hac vice forthcoming*)
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
(646) 357-1100
smartin@hausfeld.com kmadiraju@hausfeld.com

Michael P. Lehmann (*pro hac vice forthcoming*)
HAUSFELD LLP
580 California Street, 12th Floor
San Francisco, California 94104
(415) 633-1908
mlehmann@hausfeld.com

Justin S. Nematzadeh (*pro hac vice forthcoming*)
NEMATZADEH PLLC
1129 Northern Boulevard, Suite 457
Manhasset, NY, 11030
(646) 799-6729
jsn@nematlawyers.com

John W. ("Don") Barrett (*admitted*)
Katherine B. Riley (*pro hac vice forthcoming*)
Sterling Aldridge (*pro hac vice forthcoming*)
BARRETT LAW GROUP, P.A.
404 Court Square North
P.O. Box: 927
Lexington, MS 39095
(662) 834-2488
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com
saldridge@barrettlawgroup.com

Gordon Ball (*pro hac vice forthcoming*)
GORDON BALL PLLC
322 31st Avenue N #113
Nashville, TN 37203
(865) 525-7028
gball@gordonball.com

11

Charles J. LaDuca (*pro hac vice forthcoming*)
Charles Barrett (*pro hac vice forthcoming*)
CUNEO GILBERT FLANNERY & LADUCA,
LLP
2445 M Street NW
Suite 740
Washington, DC  20037
(202) 789-3960
charlesl@cuneolaw.com
cbarrett@cuneolaw.com

Robert J. Cynkar
MCSWEENEY CYNKAR & KACHOUROFF,
PLLC
3126 Elmendorf Drive
Oakton, VA 22124
(703) 621-3300
rcynkar@mck-lawyers.com

***Counsel for Amici***